IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANA CELIA VARGAS GONZALEZ,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

CIVIL NO. 19-2004 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On October 23, 2019, Plaintiff Ana Celia Vargas González ("Plaintiff") filed the present case challenging the denial of her petition for Social Security disability benefits by Defendant Andrew Saul, Commissioner of Social Security ("Commissioner" or "Defendant"). (Docket No. 1).[1] Shortly thereafter, Plaintiff consented to proceed before a Magistrate Judge and the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment (Docket Nos. 5, 6 and 7).[2] On June 15, 2020, the Commissioner answered the Complaint and then filed a copy of the administrative record. (Docket Nos. 13 and 16). On September 29, 2020, Plaintiff filed her memorandum of law (Docket No. 22) and on October 26, 2020 the Commissioner filed his memorandum of law. (Docket No. 23).

After careful review of the entire record, the Court AFFIRMS the Commissioner's

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. 28 U.S.C. section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civ. P. 73(a).

decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former sewing machine operator, filed an application for disability benefits with an alleged onset date of disability of August 9, 2016. The application was initially denied, as was the reconsideration. (Tr. pp. 108-111 and 112-114). Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ") which was held on December 12, 2018. Plaintiff was present with counsel and testified about her claims. (Tr. pp. 81-107). During the hearing, testimony was also heard from a Vocational Expert ("VE") regarding the kinds of jobs that Plaintiff could be able to perform despite her ailments. (Id.).

On January 29, 2019, the ALJ issued an opinion finding Plaintiff was not disabled from the onset date through her last insured date. (Tr. pp. 62-73).

As part of the ALJ's fact-finding responsibilities, she made the following findings of fact in this case:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.

2. Plaintiff did not engage in any substantial gainful activity during the period since the alleged onset date of August 9, 2016 through her last insured date.

3. Through the last insured date, Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, lumbar spine disorder, cervical spine disorder, affective disorder, and anxiety disorder.

4. Plaintiff did not have an impairment or combination of impairments that

       met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5. Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except she could: frequently handle and finger with both upper extremities; frequently climb ramps and stairs but no climbing of ladders, ropes, or scaffolds; frequently balance, kneel, and stoop and occasionally crouch and crawl. She could never work at unprotected heights but could occasionally work around moving mechanical parts and operate a motor vehicle. She had the following mental limitations: she could perform simple, routine tasks, make simple work-related decisions, interact occasionally with the public and deal with simple changes in the work setting.

6. Through the last date insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on October 14, 1967, and was 49 years old, which is defined as a younger individual, age 18-49, on the last insured date.

8. Plaintiff was not able to communicate in English and was considered in the same way as an individual who is illiterate in English.

9. Transferability of job skills was not an issue in this case because Plaintiff's past relevant work was unskilled.

10. Through the date last insured, considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in

        the national economy that Plaintiff could perform, such as housekeeping cleaner, produce sorter and laundry folder.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 9, 2016, the alleged onset date, through September 31, 2016, the last insured date.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner which is subject to review by this Court. (Tr. pp. 7-10).

Plaintiff objects the ALJ's final decision denying her disability benefits alleging that the determination that Plaintiff was not disabled was not supported by substantial evidence. The Commissioner disagrees.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 2294 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy,

regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In determining whether a claimant is disabled, a five-step sequential evaluation process must be applied in making a final determination. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. § 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. § 404.1520(d); 20 C.F.R. pt. 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant can perform his/her previous work, he/she is not disabled. § 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. § 404.1520(f).

In the case at bar, the ALJ determined at step 2 that Plaintiff had several severe impairments, and at step 3, that those impairments were not equivalent to any listed impairment and were therefore not severe enough by themselves to preclude gainful activity. Moving on to the remaining steps in the equation, the ALJ then found at step 4 that Plaintiff could not perform her previous work as a sewing machine operator. The ALJ then moved on to step 5, where she found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as a housekeeping cleaner, produce sorter and laundry folder. Therefore, the ALJ concluded that Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court is authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment either affirming, modifying, or reversing the final decision of the Commissioner. That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The Court must defer to the ALJ's findings of fact if those

findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). On the other hand, if the findings and conclusions are reached by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," then they are not conclusive and must be reversed. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

It is important to note that "the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018), Nguyen, 172 F.3d at 31. Thus, this Court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Plaintiff avers that the ALJ's conclusion was not based on substantial evidence. She argues that testimony of a medical expert was needed at the administrative hearing, and for this reason, the ALJ "discounted the diagnosis of fibromyalgia without medical back up"[3], and consequently, erred in finding that this condition was not severe. Plaintiff further posits that the ALJ's determination at step 5, as to the kinds of jobs Plaintiff could perform, was flawed. First, she argues that the DOT's job titles are obsolete. Second,

---

[3] Docket No. 22, p. 6.

she avers that, because the VE relied on one source to provide job titles and a different source to provide job numbers, this rendered the VE's recommendations about what jobs she could perform "highly inaccurate". (Docket No. 22, p. 7).[4]

The Commissioner argues that the ALJ did not discount the fibromyalgia claims as alleged, and that Plaintiff has failed to establish that her fibromyalgia limits her ability to be gainfully employed. He also posits that there is no requirement that the ALJ obtain the testimony of a medical expert to determine Plaintiff's RFC. Regarding the VE's testimony, he argues that because Plaintiff failed to challenge the VE's numbers and sources at the administrative level, she waived this argument.

Because Plaintiff alleged disability beginning August 9, 2016 and her last insured date was December 31, 2016, she must establish that she became disabled during this narrow window of time. The First Circuit has held that "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question [of] whether the claimant's impairment reached disabling severity before his insurance status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552 (1st Cir. 1993) (unpublished) (*citing to* Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982)); Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984); and Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 754 (E.D.Mich. 2003) ("Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status."). For the evidence to be useful, it ought to be "reasonably proximate" to the date

---

[4] Plaintiff did not challenge the ALJ's conclusions about her mental status. Thus, the Court will not disturb them.

last insured. Cooper, 277 F.Supp.2d at 754 (*quoting* Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir. 1976)).

The record in this case was extensive but most of it predated or post-dated the limited relevant time-period. As such, said portions were not considered in the Court's analysis.

**A. Fibromyalgia.**

Plaintiff's first contention is that the ALJ erred by discounting her fibromyalgia diagnosis because a medical expert was needed at the hearing to supplement the conclusion that found that this condition was not severe. Having examined the record evidence, the Court cannot agree with Plaintiff.

As previously mentioned, at step 2, the ALJ must examine a claimant's medical conditions and determine whether he or she has a medically severe impairment or combination of impairments. See § 404.1520(c). An impairment will be found not to be severe if it establishes only a slight abnormality or combination thereof which has no more than a *de minimis* effect on a person's ability to perform basic work activities. McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

In the case at bar, Social Security Ruling 12-2p ("SSR 12-2p") is the agency's guide for fibromyalgia claims. Its purpose is to "provide guidance on how [the agency] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the agency] evaluate[s] FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12-2p, 2012 WL 3104869 (S.S.A.) at *1. According to SSR 12-2p, a claimant can establish

a medically determinable impairment of fibromyalgia if a physician has diagnosed fibromyalgia and the claimant satisfies certain diagnostic criteria. Id. at *2.

SSR 12-2p states that the ALJ may find that a person has a medically determinable impairment of fibromyalgia as follows: 1) the claimant must establish a history of widespread pain; 2) the claimant has at least 11 positive tender points out of 18 on physical examination, above and below the waist with an approximate force of 9 pounds; 3) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, and/or irritable bowel syndrome; and 4) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p at *3. Once this has been established, the Commissioner will apply the five-step sequential evaluation to determine whether the claimant is disabled. Id. at *5; see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

None of these findings were made in the case at bar by any physician, thus automatically precluding a diagnosis that this condition was severe. Bourinot v. Colvin, 95 F. Supp. 3d 161, 180 (D. Mass. 2015) (the ALJ must consider all available evidence, including objective medical evidence, to determine a claimant's disability). However, the ALJ went further in her consideration of this ailment.

As is well known, an ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical

opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ then analyzes the opinions of state agency consultants, examining sources, and treating sources and reaches a conclusion as to a claimants' capacity for work.

In the case at bar, the record contains notes pertaining to the fibromyalgia diagnosis from Plaintiff's treating physician Dr. Eduardo Feliciano ("Dr. Feliciano"), consulting physician Dr. Luis Acevedo Marty ("Dr. Acevedo"), and state agency non-examining physicians Dr. Rafael Queipó ("Dr. Queipó") and Dr. Ulises Meléndez ("Dr. Meléndez"), all of which were incorporated into the ALJ's opinion.

As both the ALJ and the Commissioner noted, the treatment notes by Dr. Feliciano indicated a fibromyalgia diagnosis yet offered little in the way of treatment notes for the ailment. The record also lacked any special or ongoing treatment for this condition other than medications, such as Neurotonin (a nerve pain medication) and Flexeril (a muscle relaxer). (Tr. pp. 1169-1178, 1184, 1187). Additionally, exam findings for the relevant period revealed that Plaintiff's neurological system and extremities were normal and Plaintiff's laboratory bloodwork was negative for inflammatory markers. (Tr. pp. 516, and 615-616).

On October 27, 2016, consulting physician Dr. Acevedo examined Plaintiff. In Dr. Acevedo's report, he indicated that he found that Plaintiff had excellent sensory function

in the upper and lower extremities, muscular strength of 4/5 in the upper extremities and 4+/5 in the lower extremities, 80/90 limitation in back flexion full range of motion in her extremities, normal reflexes, normal gait, and a number of negative tests, all showing unremarkable relatively results. (Tr. pp. 1232-1244). As the Commissioner noted, while Plaintiff complained to Dr. Acevedo of neck and low-back pain, his objective examination results showed a minimally limiting condition. Dr. Acevedo's diagnostic impression was that Plaintiff suffered from "[m]ajor depressive disorder, chronic lower back pain, chronic cervical pain, fibromyalgia by history, migraine, bilateral carpal tunnel syndrome, overweight". (Id.). There is a lack of more aggressive treatment over the relevant time-period and of record evidence. This undercuts Plaintiff's allegations that her fibromyalgia diagnosis imposed severe limitations that prevented her from performing any gainful activity within the relevant period.

Dr. Acevedo's report simply reported Plaintiff's current condition at the time of the examination in October 2016 and did not offer any opinion about Plaintiff's RFC. Therefore, it cannot serve to establish that Plaintiff's fibromyalgia was a severe impairment.

Plaintiff's fibromyalgia diagnosis came a few months later thru the opinions of the state agency physicians who reviewed the record evidence. Dr. Queipó reviewed the record on December 2, 2016 and Dr. Meléndez barely two months later, on January 31, 2017. (Tr. pp. 719, 739). Both medical professionals found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (Id.) Dr. Queipó

and Dr. Meléndez also found that Plaintiff could frequently climb ramps and stairs, balance, and kneel; and occasionally crouch and crawl but could not use ladders, ropes, or scaffolds. (Id.). Both physicians specifically acknowledged Plaintiff's fibromyalgia diagnosis in their opinions, meaning they incorporated limitations from the condition into their conclusion about Plaintiff's RFC. (Id.)

Based on the totality of the record, the ALJ then concluded that Plaintiff was able to perform light work despite her fibromyalgia diagnosis. This conclusion gathers the medical opinions and conclusions of the four medical practitioners of record regarding this ailment. Furthermore, the RFC rendered by Drs. Queipó and Meléndez is consistent with the modest examination findings of Dr. Acevedo. It is also in harmony with the scant progress notes from treating physician Dr. Feliciano, which only revealed that Plaintiff's neurological system and extremities were within normal limits, showed mild spinal degenerative changes, showed negative inflammatory markers and offered conservative treatment with muscle relaxers and nerve pain medication for this allegedly majorly debilitating condition. The opinions of Dr. Queipó and Dr. Meléndez were consistent with other evidence in the record, thus, the ALJ properly gave them great weight. See 20 C.F.R. § 404.1527(c)(4); Berríos Lopez v. Sec'y Health and Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Bourinot v. Colvin, 95 F. Supp. 3d at 179 ("Opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources" depending on the circumstances of each case).

Taken as a whole, these findings provide substantial evidence for the ALJ to conclude that Plaintiff's fibromyalgia was not a severe impairment. For these reasons, the Court finds Plaintiff's argument that the ALJ failed to consider her fibromyalgia diagnosis unavailing, and on the contrary, finds that the ALJ's conclusion as to this condition was buttressed by substantial evidence.

Regarding Plaintiff's claim that the ALJ was required to obtain the testimony of a medical expert to determine her RFC, the Court likewise finds it untenable. Plaintiff mentions this error in one sentence at page 4 but fails to develop it in her brief. To the extent that this assertion is part of her overall argument that the Commissioner's decision is not supported by substantial evidence, it has been established that the ALJ has discretion to request additional evidence and further develop the record if there is not enough record evidence to reach a conclusion as to a Plaintiff's disability. It is the ALJ who is tasked with deciding whether there is sufficient record evidence to craft an RFC. See 20 C.F.R. § 404.1520b(b)(1); Guzmán Pérez v. Comm'r of Soc. Sec., 2019 WL 5858159, at *4 (D.P.R. Nov. 8, 2019) (holding there was no requirement for the ALJ to hear testimony of a medical expert and that ALJ's RFC determination was supported by substantial evidence since Plaintiff had not identified any gaps in the record)[5]; see also Sims v. Apfel, 530 U.S. 103, 110-11, 120 S.Ct. 2080, 2085 (2000) ("[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.").

---

[5] Counsel for Plaintiff should be aware of the holding in this case because he was lead counsel for that plaintiff as well.

The ALJ in the instant case had information regarding Plaintiff's fibromyalgia condition from four different physicians, to wit, consulting examiner Dr. Acevedo, state agency physicians Drs. Meléndez and Queipó, and the scant notes from treating physician Dr. Feliciano. This is clearly sufficient evidence upon which the ALJ could reach a conclusion regarding Plaintiff's RFC. Therefore, having a medical advisor at the hearing was unnecessary.

Additionally, as in the case of Guzmán Pérez, 2019 WL 5858159, at *4, Plaintiff has failed to identify any evidentiary gaps in the record that would sustain her argument that the record evidence available to the ALJ was insufficient to make an RFC determination.

**B.     The DOT Jobs.**

Plaintiff's second argument is that the DOT's job titles are outdated. She further argues that, because the DOT does not provide information about the number of jobs that exist, the VE must consult another source, the Standard Occupational Classification manual ("SOC") to provide job numbers and this results in "highly inaccurate" data because a one to one correlation does not exist. (Docket No. 22, p. 7). That is, the SOC does not use the DOT's job grouping system, and therefore, "when a VE identifies a SOC code and the number of jobs in that code, that number approximates (at best) the number of positions within a DOT job group, not the specific DOT job title that the VE identified as suitable for a particular claimant". (Docket No. 22, p. 7). For this reason, Plaintiff opines that the VE's conclusion, that a certain job is available in the national economy, is not accurate.

As an initial matter, regarding the DOT's titles, the Court notes that Plaintiff has

not provided any caselaw to buttress her allegation that the DOT's titles are outdated. Additionally, Plaintiff failed to show how this error affects her ability to perform gainful activity, which is the ultimate issue to be determined. This alone militates against her claims.

Regarding the sources of the data used by the VE at the hearing, the regulations and case law provide that a VE may provide evidence regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his/her functional limitations. 20 C.F.R. § 404.1566. The agency's regulations clearly allow for a VE to obtain data from the DOT but also from reliable publications, other government agencies, directly from employers, or the VE's own personal experiences. Id.; SSR 00-4p, 2000 WL 1898704 *2.

In the present case, the VE stated during the hearing that she considered information from the DOT and the U.S. Department of Labor, and implied that she also consulted the resources of "other professional rehabilitation associations", all of which are valid sources. (Tr. p. 99). The Court notes that Plaintiff's counsel did not question the VE's qualifications during the hearing. Moreover, Plaintiff's counsel had the opportunity to specifically question the VE regarding the sources of her job data but failed to do so.

In 2019, the United States Supreme Court considered whether a VE's refusal to provide data underlying her opinion regarding job availability met the "substantial evidence" threshold in the case of Biestek v Berryhill, 139 S.Ct. 1148 (2019).

The issue in Biestek was whether the VE's testimony about what jobs were available

in the national economy could constitute substantial evidence as required under the law when the VE declined to produce her supporting data after being asked about it by counsel during the administrative hearing.[6] Plaintiff in that case argued that testimony of a VE, who refuses to supply his or her supporting data about job availability, can never clear the substantial evidence bar.

The Supreme Court ruled that the determination could not be a blanket finding applicable to all cases across the board, but rather, had to be examined on a case by case basis. It further noted that in some cases, "the refusal to disclose data, considered along with other shortcomings, will undercut an expert's credibility and prevent a court from finding that 'a reasonable mind' could accept the expert's testimony. But in other cases, that refusal will have no such consequence" because an applicant may "probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions". Id., at 1156-1157. In addition, the Supreme Court held that this matter should be left to the ALJ. ("And in so doing, it defers to the presiding ALJ, who has seen the hearing up close").

Plaintiff in this case criticizes the source of the VE's numbers and questions what was taken into account when the VE concluded that a particular job was available "in the national economy" due to the lack of a one to one correlation between the DOT and the SOC. As the Supreme Court in Biestek pointed out, however, it is counsel's job to probe

---

[6] The VE in Biestek then explained that the data in question was obtained from the Bureau of Labor Statistics and her "own individual labor market surveys". Id. at 1153.

these details at the hearing level directly from the VE, which Plaintiff's counsel failed to do in this case.[7]

It has long been held that, although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz, 955 F.2d at 769 (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Where the facts permit diverse inferences, the Court will affirm the Secretary even if the Court might have reached a different result, as long as that result is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

In sum, the Court finds that Plaintiff's argument regarding the inaccuracy of the VE's method for determining possible jobs for a given claimant is unsupported by the caselaw and is specifically allowed by the agency regulations. Plaintiff had ample opportunity to question the VE about the accuracy and source of her data regarding the possible jobs Plaintiff could perform and their national availability during the hearing and elected not do so. Accordingly, the Court finds that the ALJ's conclusion that Plaintiff could perform at least some gainful activity is supported by substantial record evidence.

---

[7] This issue never materialized during the hearing in this case because the VE was never asked to produce her sources. Consequently, the VE had no opportunity to refuse to do so. Counsel for Plaintiff never challenged the VE's sources or her recommendations at the hearing, where the VE had her source material and could answer these questions. On a cold and undeveloped record from the hearing level, where this matter was not raised, the Court cannot find that the VE's sources and conclusions do not meet the substantial evidence threshold. See Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 449 (2d Cir. 2012) (noting that "as deferential as the 'substantial evidence' standard is, it is also extremely flexible"). Biestek nevertheless establishes that counsel should raise and explore this issue at the hearing level if he/she deems it necessary.

# CONCLUSION

Based on the above, the Court finds that: the ALJ's finding that Plaintiff's fibromyalgia was not a severe impairment was supported by four different physicians and other record evidence and laboratory findings; there is no requirement that an ALJ elicit medical testimony at the hearing; and Plaintiff's argument regarding the inaccuracy of the VE's method for determining possible jobs for a given claimant is without merit.

Thus, there is substantial evidence of record to support the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Commissioner's decision is AFFIRMED.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 8th day of July 2021.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE